**QURESHI LAW PC**
Omar G. Qureshi (Cal. Bar No. 323493)
omar@qureshi.law
Max A. Schoening (Cal Bar No. 324643)
max@qureshi.law
700 Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (213) 786-3478
Fax: (213) 277-8989

*Attorneys for Corey Crittenden*

## UNITED STATED DISTRCIT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY CRITTENDEN,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a public entity; MICHAEL ALBUREZ, an individual; BRANDON VANARSDALE, an individual; TERRIE COATS, and individual; and DOES 1 through 20, individuals, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. **Excessive Force, 42 U.S.C. § 1983**<br>2. **Municipal Liability – Policy, Practice, or Custom, 42 U.S.C. § 1983**<br>3. **Municipal Liability – Failure to Train, 42 U.S.C. § 1983**<br>4. **Municipal Liability – Ratification, 42 U.S.C. § 1983**<br>5. **Supervisory Liability, 42 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Corey Crittenden hereby complains against Defendants COUNTY OF LOS ANGELES, MICHAEL ALBUREZ, BRANDON VANARSDALE, TERRIE COATS, and DOES 1 through 20 (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. This civil rights action seeks compensatory and punitive damages for the violations of Plaintiff Corey Crittenden's federal constitutional rights by Defendants COUNTY

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

OF LOS ANGELES ("COUNTY") and Los Angeles County Sheriff's Department ("LACSD") deputies MICHAEL ALBUREZ, BRANDON VANARSDALE, TERRIE COATS, and DOES 1-20. On September 5, 2022, Defendant ALBUREZ exited his patrol vehicle and approached Mr. Crittenden from behind as he was walking down the sidewalk in Lancaster, California. ALBUREZ had shot and killed an unarmed man just two years prior. ALBUREZ aimed his gun at the back of Mr. Crittenden's body and fired repeatedly, even though Mr. Crittenden was walking away from him with his arms and hands to his sides, was not reaching for anything and was not making any sudden or threatening movements or gestures. Defendants VANARSDALE and COATS also shot at Mr. Crittenden. Multiple bullets fired by the three deputies hit Mr. Crittenden, including the back of his head and back. He entered a coma but miraculously survived with severe ongoing pain, suffering, and disabilities.

2.     Defendants ALBUREZ, VANARSDALE, and COATS, and DOES 1-20 are liable for using and failing to prevent excessive force against Mr. Crittenden. Defendant COUNTY is liable under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### **GENERAL ALLEGATIONS**

### JURISDICTION AND VENUE

3.     The Court has jurisdiction over Mr. Crittenden's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because he asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

4.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2), because all incidents, events, and occurrences giving rise to this action occurred within this district.

### PARTIES

5.     At the time he was shot, Corey Crittenden was an 18-year-old man residing in Lancaster, California. He currently resides in Stockton, California.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

6. At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a governmental entity organized and existing under the laws of the State of California in the County of Los Angeles, California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Sheriff's Department ("LACSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of LACSD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of ALBUREZ, VANARSDALE, COATS, and Defendants DOES 1-20.

7. At all relevant times, Defendant ALBUREZ, an individual, is and was a deputy working for LACSD. At all relevant times, he was acting under color of law within the course and scope of his duties as an officer working for LACSD, and with the complete authority and ratification of his principals, the COUNTY and LACSD.

8. At all relevant times, Defendant VANARSDALE, an individual, is and was a deputy working for LACSD. At all relevant times, he was acting under color of law within the course and scope of his duties as an officer working for LACSD, and with the complete authority and ratification of his principals, the COUNTY and LACSD.

9. At all relevant times, Defendant COATS, an individual, is and was a deputy working for LACSD. At all relevant times, she was acting under color of law within the course and scope of her duties as an officer working for LACSD and with the complete authority and ratification of her principals, the COUNTY and LACSD.

10. At all relevant times, Defendants DOES 1-10, individuals, inclusive, were and are duly appointed LACSD deputies, officials, and employees and agents of Defendant COUNTY and LACSD (regardless of rank or title), subject to oversight and supervision by Defendant COUNTY's elected and non-elected officials and acted within the course and scope of their employment and under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usage of Defendant COUNTY and LACSD, and under color

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

of the statutes and regulations of the State of California. At all relevant times, Defendants DOES 1-10, inclusive, acted with the complete authority and ratification of their principals, Defendant COUNTY and LACSD.

11.    Defendants DOES 11-20 ("Supervisor DOES"), individuals, inclusive, were and are managerial, supervisorial, or policymaking employees of the Defendant COUNTY and LACSD who were acting under color of law within the course and scope of their duties as supervisorial officials for the LACSD. Defendants DOES 11-20, inclusive, were acting with the complete authority of their principals, Defendant COUNTY and LACSD.

12.    At all relevant times, Defendants DOES 11-20 were the agents of each Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each Defendant.

13.    Defendants ALBUREZ, VANARSDALE, and COATS, and DOES 1-20 are sued in their individual capacities.

14.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-20, inclusive, are unknown to Plaintiff, who sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

15.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

16.    Plaintiff is informed and believes, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

17. All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

18. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein all individual Defendants, including Defendants ALBUREZ, VANARSDALE, and COATS and DOES 1-20, acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and Defendant COUNTY.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

LACSD DEPUTIES USED EXCESSIVE FORCE WHEN THEY SHOT MR. CRITTENDEN

19. Plaintiff herein incorporates by reference all prior allegations as if set forth in full.

20. The morning of September 5, 2022, LACSD deputies from the Lancaster Station went to the 44500 block of Sierra Highway, in Lancaster, California, in response to a traffic collision. Mr. Crittenden, an 18-year-old Black man, was walking on the sidewalk near the scene of the collision. Multiple LACSD vehicles arrived at the scene.

21. As Mr. Crittenden walked down the sidewalk, Defendant ALBUREZ exited his vehicle with his gun drawn, approached Mr. Crittenden from behind, and without any warning, shot him multiple times from behind. At the time ALBUREZ shot him, Mr. Crittenden was walking away from ALBUREZ, with his arms and hands by his side, and had not made any sudden or threatening movements or statements. He had not raised either arm or hand up, reached for anything, or pointed anything any anyone. Nearly simultaneously to ALBUREZ, Defendants VANARSDALE and COATS also shot at Mr. Crittenden, even though he made no threatening movements and posed no immediate threat of death of serious bodily injury to any person. All combined, Defendants ALBUREZ, VANARSDALE, and COATS fired approximately 12 to 17 bullets at Mr. Crittenden.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

22.     Multiple bullets fired by Defendants ALBUREZ, VANARSDALE, and COATS—on information and belief, between 8 and 12—hit Mr. Crittenden's head and body. One bullet entered the back of his head and lodged in his brain; another ruptured his kidney; and another entered near his spine.

### THE LACSD DEPUTIES' EXCESSIVE FORCE RESULTED IN SEVERE LONG-TERM INJURIES TO MR. CRITTENDEN

23.     Defendants ALBUREZ's, VANARSDALE's, and COAT's use of excessive force caused major physical and mental injuries and pain to Mr. Crittenden.

24.     Mr. Crittenden did not immediately lose consciousness when shot. Instead, he fell to the ground and felt severe pain throughout his body as blood poured out of his head and torso.

25.     Later that day, Mr. Crittenden entered a roughly month-long coma. He underwent brain surgery to remove a bullet from his brain. The traumatic brain injury has—and will continue to—adversely impact his memory and cognitive functioning.

26.     Since waking from the coma, he has endured excruciating physical pain throughout his body, including in his head, back, and kidney. The bullet wounds caused him to have foot drop and severely undermined his mobility, making him reliant on a wheelchair and walker. He is forced to use a urine drainage bag. The pain and disabilities are ongoing and will continue into the future.

27.     The shooting also inflicted—and will continue to inflict—great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of sleep, disgrace, humiliation, and loss of enjoyment of life. He was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

//

//

//

## THE LACSD—AND LANCASTER STATION IN PARTICULAR—HAS A WELL-ESTABLISHED PATTERN AND PRACTICE OF ENGAGING IN EXCESSIVE FORCE

28.     Between 2015 and 2024, LACSD deputies fired gunshots that hit civilians in 204 different incidents: 24 in 2015, 27 in 2016, 14 in 2017, 18 in 2018, 22 in 2019, 26 in 2020, 24 in 2021, 18 in 2022, 14 in 2023, and 17 in 2024, according to the Office of the Inspector General of the County of Los Angeles. Many of these shootings involved excessive uses of force, resulting in lawsuits, settlements, and verdicts against the LACSD, its deputies, and the COUNTY.

29.     The Lancaster Station of LACSD—whose deputies shot Mr. Crittenden—has an especially troubled history. In June 2013, the United States Department of Justice (U.S. DOJ) released a letter detailing its findings, based on an investigation launched in 2011, that LACSD's Lancaster and Palmdale stations engaged in a pattern of excessive force in violation of the United States Constitution and federal law. In April 2015, the U.S. DOJ, COUNTY, and LACSD reached a Settlement Agreement aimed at ensuring that the Lancaster and Palmdale stations policed in compliance with the United States Constitution.

30.     Unfortunately, by the time Defendants shot Mr. Crittenden—more than seven years after the Settlement Agreement was reached—LACSD still had not come into compliance with the terms of the Settlement Agreement aimed at ensuring constitutional policing. Specifically, the Settlement Agreement's Monitoring Team concluded in its bi-annual report, published in December 2022, that LACSD's "UOF [use of force] policy, training, and data analysis remain out of compliance."

31.     Based on in-depth use of force case reviews, the Monitoring Team's December 2022 report identified "failures on the part of investigators and managers, including executive managers, to identify important issues, including clear allegations of misconduct, and apply corrective action." The Monitoring Team identified "cases where LASD policy was violated—sometimes multiple times in the same event—but those violations were not identified or addressed by either the investigator or senior LASD management as required" by the Settlement Agreement. The Monitoring Team called for stronger measures by LACSD executives to "(1)

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

provide deputies with the training and guidance they need and to then hold them accountable for subsequent policy violations, and (2) hold supervisors and managers accountable for the thorough investigation, review, and adjudication of uses of force."

32.    The Monitoring Team underscored that "for seven and a half years, LASD has failed to develop and publish a UOF policy and related training that satisfies SA [Settlement Agreement] mandates." This failure, the Monitoring Team explained, "reduces the preparedness of deputies during stressful encounters and their ability to successfully resolve those tense and evolving situations without having to resort to force, and when that is not possible, to tactically resolve those incidents using lower levels of force."

33.    According to the Monitoring Team, it was "inevitable that the types of tactical errors, policy violations, and inadequate investigations" that it had found would continue unless there were changes to policy and training.

34.    Overall, the Monitoring Team's December 2022 report criticized the "continual managerial carelessness in achieving compliance" with the Settlement Agreement's Use of Force requirements.

35.    The Lancaster Station had at least 10 deputy-involved shootings between 2015 and 2020.

THIS COMPLAINT IS TIMELY

36.    The statute of limitations was tolled when Mr. Crittenden was in a coma between September 5, 2022, and on or about October 4, 2022, and thus lacked legal capacity to make decisions. *See* Cal. Civ. Proc. Code § 352(a).

37.    The statute of limitations was also tolled between October 5, 2022, and June 28, 2023, when Mr. Crittenden had criminal charges pending against him before a superior court for alleged offenses relating to the Defendant deputies' use of excessive force against him on September 5, 2022. *See* Cal. Gov't Code § 945.3; *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 740-42 (9th Cir. 2020).

38.    Accordingly, this Complaint is filed within the statute of limitations for all the causes of action.

**FIRST CAUSE OF ACTION**

**Violation of the Fourth Amendment – Excessive Force (42 U.S.C. § 1983)**

(Against Defendants ALBUREZ, VANARSDALE, and COATS)

39.     Mr. Crittenden refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

40.     At all relevant times Defendants ALBUREZ, VANARSDALE and COATS acted under the color of state law and within the course and scope of their employment as LACSD deputies for Defendant COUNTY.

41.     The Fourth Amendment of the United States Constitution, as applied to state actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

42.     Defendants ALBUREZ, VANARSDALE, and COATS used excessive and unreasonable force against Mr. Crittenden when they repeatedly shot him on September 5, 2022. Their unjustified use of such force deprived Mr. Crittenden of his right to be secure in his person against unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

43.     When Defendants used the above-described force against Mr. Crittenden, no officer or other person was about to be harmed by him. He was not an immediate threat of death or serious bodily injury at any time, there were other reasonable alternatives to the use of deadly force, and no verbal warning was given prior to the shots that deadly force would be used. ALBUREZ possessed a less lethal ammunitions launcher but decided not to use it.

44.     Defendants ALBUREZ, VANARSDALE, and COATS caused serious physical and mental injuries to Mr. Crittenden by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. These acts and omissions violated Mr. Crittenden's Fourth Amendment rights.

45.     As a result of their misconduct, Defendants are liable for Mr. Crittenden's injuries, either because they were integral participants in the excessive use of force, or because they failed to intervene to prevent these violations.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

46.     The misconduct directly caused Mr. Crittenden to suffer great physical and mental injuries.

47.     Accordingly, Defendants ALBUREZ, VANARSDALE, and COATS are liable to Mr. Crittenden for compensatory damages under 42 U.S.C. § 1983.

48.     Their misconduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Crittenden and warrants the imposition of exemplary and punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

### Municipal Liability – Policy, Practice, or Custom (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 11-20)

49.     Mr. Crittenden refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

50.     Defendants ALBUREZ, VANARSDALE, and COATS, and DOES 1-20 acted under color of law and within the course and scope of their employment by LACSD and Defendant COUNTY.

51.     Defendants ALBUREZ, VANARSDALE, and COATS, and DOES 1-20 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

52.     On information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the excessive use of force against Mr. Crittenden. To the contrary, Defendant DOES and COUNTY made false statements to the public about the incident attempting to justify the shooting.

53.     A public entity is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell,* 436 U.S. at 658.

54.     On and for some time prior to and after September 5, 2022 (and continuing to the present date), Defendant COUNTY deprived Mr. Crittenden and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing, and applying the following unconstitutional customs, policies, and practices:

a.     Using excessive force, including by shooting individuals when conducting stops or arrests.

b.     Providing inadequate training regarding the use of force.

c.     Employing and retaining LACSD deputies, including but not limited to Defendant ALBUREZ, who the COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow the law and written COUNTY and LACSD policies concerning the use of force, including the use of deadly force.

d.     Inadequately supervising, training, controlling, assigning, and disciplining LACSD deputies, including Defendants, concerning the use of force, including shooting guns and using deadly force.

e.     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Defendants and other LACSD deputies.

f.     Ratifying the misconduct and unlawful uses of excessive force by LACSD deputies, including but not limited to Defendants.

g.     Failing to discipline LACSD deputies, including but not limited to Defendants, for conduct contrary to law and departmental policy.

h.     Failing to re-train LACSD deputies, including but not limited to Defendant ALBUREZ, concerning the use of force despite complaints of excessive force filed against them with the COUNTY, in the Superior Courts, and in the District Courts.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

COMPLAINT
-11-

i.       Encouraging, accommodating, or facilitating a "thin blue line," "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which LACSD deputies do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing or make misleading or false statements about their conduct.

j.       Announcing that the use of unreasonable, unjustified, and excessive force are "within policy," including conduct that was later determined to be unconstitutional.

k.       Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

l.       Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by deputies.

m.      Failing to adequately discipline LACSD deputies, including Defendant deputies, for the above-referenced categories of misconduct, including by meting out "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

n.       Tolerating, failing to dismantle, and tacitly endorsing the existence of deputy gangs within LACSD—including within the Lancaster Station—that engage in excessive force, glorify excessive force against civilians, and foster a code of silence and practice of coverups concerning incidents of excessive force. These gangs are comprised of member deputies that engage in excessive force as a condition of admission to said gangs.

o.       Failing to implement the use of force policy and training requirements in the Settlement Agreement reached with the U.S. DOJ.

55.      Upon information and belief, the COUNTY, including but not limited to LACSD, have an unofficial policy, practice and/or custom of finding almost all—if not all—of its deputy use-of-force incidents to be within policy, of not disciplining its officers involved in use-of-force incidents, or not retraining or firing officers involved in the incidents, and of not recommending criminal charges against their officers involved in excessive and unreasonable

use of force. As a result, deputies involved in excessive uses of force are allowed back to patrol the streets even though the COUNTY knew, or should have known, that these deputies have a propensity for using excessive force against the citizens that the officers are supposed to protect and serve.

56.     Upon information and belief, as a result of the COUNTY's policies, customs and/or practices, deputies know that if they use excessive force against someone, they will not be disciplined, and their use of force will be found within policy, which results in a significant number of COUNTY deputies being involved in numerous uses of excessive force. This policy, custom and/or practice was established by supervising and managerial employees of the COUNTY, specifically, those employees tasked with determining whether deputy-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against deputies who use excessive force.

57.     Upon information and belief, these policies, customs and/or practices are long lasting and persistent, and existed well before Defendants used excessive force against Mr. Crittenden on September 5, 2022. The policies, customs and/or practices were established so that COUNTY deputies do not bear the responsibility for the people that they use excessive force against. They exist so that the public does not have a negative perception of the COUNTY and its sheriff's department and so that the COUNTY can avoid the repercussions associated with its deputies' use of excessive force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that the policies, customs and/or practices were established was to avoid the COUNTY being liable for the uses of excessive and unreasonable force by its employees. In other words, there is a large financial incentive for COUNTY to erroneously determine that most, if not all, of its deputies' uses of force are within policy.

58.     The policies, customs, and practices of the COUNTY were done with a deliberate indifference to individuals' safety and rights.

59. The following are some examples of Defendant COUNTY's unconstitutional customs, practices and policies, failure to adequately train, and ratification of and failure to discipline continued misconduct, alleged upon information and belief:

60. On April 19, 2020, Defendant ALBUREZ unreasonably shot and killed an unarmed 37-year-old man named Richard Lugo, Jr. A federal civil rights lawsuit against the COUNTY, ALBUREZ, and others based on this killing resulted in a settlement. The case is 2:20-cv-06620 MWF-PVC. On information and belief, ALBUREZ was not disciplined or re-trained after the shooting.

61. On March 13, 2022, LACSD deputies unreasonably shot and killed Samuel Nunez in Palmdale, California, resulting in a federal civil lawsuit, 23-cv-02810-WLH-MAR, that has settled.

62. On December 4, 2023, LACSD deputy Ty Shelton unreasonably shot and killed 27-year-old Black woman Niani Finlayson in front of her daughter, without any verbal warning, after Finlayson called law enforcement to protect her and her daughter from domestic violence. A civil rights lawsuit has been filed in 2:24-cv-00902-FWS-PVC.

63. On January 13, 2024, LACSD deputies from the Century Station used excessive force when they shot and killed 38-year-old Noor Ramsis. He was walking on the sidewalk in the 1300 block of East Florence Avenue, when two LACSD deputies exited their patrol vehicle behind him and started yelling in his direction. Ramsis turned his head to look behind him, when the two deputies started shooting him multiple times. He was shot in the back and did not pose an imminent threat of death or serious bodily injury to anyone. A federal civil rights lawsuit has been filed in 2:24-cv-09997-AH-BFM.

64. On October 6, 2020, LASCD deputies unreasonably shot Nicholas Burgos, a 39-year-old man, nine times at the UCLA Harbor Hospital Mental Care Center.

65. On February 23, 2024, LACSD deputies unreasonably shot and killed Joseph Henson in the back as he ran away from them and posed no immediate threat of death or serious bodily injury to anyone. The incident occurred at a gas station on Pearlblossom highway.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

66. On March 31, 2024, LACSD deputies unreasonably shot and killed unarmed Adrian Agustin Pilar, as he drove in a vehicle next to them, posing no immediate threat of death or serious bodily injury to anyone. A civil rights lawsuit was filed in Superior Court on February 28, 2025.

67. On August 31, 2020, LACSD deputies unreasonably shot and killed Dijon Kizzee.

68. On June 26, 2019, LACSD unreasonably shot Timothy Neal in his home; Case No. 2:20-cv-06315-CBM-JC.

69. On July 3, 2019, LACSD deputies unreasonably shot and killed unarmed Rickie Starks; Case No. 19STCV38462, Case No.: 2:21-cv-05209 ODW (GJSx).

70. On August 16, 2017, LACSD deputies unreasonably shot and killed Kenneth Lewis, Jr.; Case No.: 2:18-cv-04910-CBM-SK.

71. On February 15, 2022, LACSD deputies used excessive force when they shot and killed Stephanie Brown in an unincorporated area of Lancaster. She was having a mental health crisis at the time and did not pose an immediate risk of death or serious bodily injury to anyone.

72. On January 11, 2023, a LACSD deputy used excessive force when she shot and killed unarmed Christopher Lee Mercurio in Santa Clarita.

73. On September 21, 2022, LACSD deputies used excessive force when they shot Arthur Wright, who was unarmed.

74. On April 1, 2022, LACSD deputies used excessive force when they shot Trinidad Velasco, who was unarmed.

75. On February 22, 2022, LACSD deputies used excessive force when they shot Adrian Romero, who was unarmed.

76. On August 7, 2023, a LACSD deputy unreasonably fired five shots from his gun into the back of Arturo Cernas, who was on his knees and had his back to the deputies, and was not holding a gun, knife, or any other deadly weapon. A federal civil lawsuit has been filed in 2:24-cv-03261-SPG-SK.

77.    In *Berry, et al. v. County of Los Angeles, et al.*, Case No.: 15-cv09715-BRO (KSx), numerous LACSD deputies unreasonably beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car, killing him.

78.    In *V.W., et al. v. County of Los Angeles, et al.*, Case No.: 2:18-cv03684-FMO-ARG, on February 4, 2018 Deputy Gregory Van Hoesen unreasonably shot and killed the 16-year-old Anthony Weber, shooting him in the back while unarmed.

79.    In *K.C.R., et al. v. County of Los Angeles, et al.*, Case No.: 2:13-cv03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was unreasonably shot and killed by Deputy Norma Silva.

80.    In *C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:17-cv05135-VAP-AGR, on August 2, 2016, Deputy Jeffrey Brito unreasonably shot and killed the unarmed William Bowers.

81.    In *Mitchell v. County of Los Angeles, et al.*, Case No.: CV-8421-RJK (AWx), Defendant COUNTY argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a verdict in favor of Plaintiff after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him. Deputy Manes was not disciplined or retrained for his use of deadly force.

82.    In *Gutierrez, et al. v. County of Los Angeles, et al.*, Case No.: CV10-7608 PSG (AJWx), a jury found that Deputy David Salazar used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family substantial damages. Deputy Salazar was not disciplined or retrained for his use of deadly force.

83.    In *Beets v. County of Los Angeles, et al.*, Case No.: KC-057667, a jury determined that the use of deadly force by the defendant COUNTY deputy was excessive and unreasonable under the circumstances, and returned a verdict in favor of Plaintiff.

84.    In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-117212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed. Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

85. In *Lobrono, et al. v. County of Los Angeles, et al.*, Case No.: CV-1303838, on February 1, 2013, County Deputy Ray Huang unreasoanbly shot Michael Lobrono, who was unarmed. Deputy Huang was not disciplined or retrained for his use of deadly force.

86. In *Sanchez v. County of Los Angeles, et al.*, Case No.: CV 13-0383, on April 20, 2013, County Deputy Christopher Gomez unreasonably shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting. Deputy Gomez was not disciplined or retrained for his use of deadly force.

87. In *N.K.A., et al. v. County of Los Angeles*, et al., Case No.: CV 1305507, on May 11, 2013, County Deputy Luis Mendoza unreasonably shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting. Deputy Mendoza was not disciplined or retrained for his use of deadly force.

88. In *D.A.B., et al. v. County of Los Angeles, et al.*, Case No.: CV-1405207 FMO (ASx), on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez unreasonably shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot. Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

89. In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc GONZALES unreasonably discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger. Deputy GONZALES was not disciplined or retrained for his use of deadly force.

90. In *Belia C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:15cv-09585-SJO-FFM, Deputy Espinosa unreasonably shot and killed Tony C.M., who was unarmed at the time of the shooting.

91. In *Marian Amaya, et al., v. County of Los Angeles, et al.*, Case No.: VC062384, County deputies unreasonably shot and killed Emiliano Amaya, with shots to Mr. Amaya's back.

92.     In *Evangelina P. v. County of Los Angeles, et al.,* Case No. 19STCV03826, a wrongful death lawsuit alleged excessive force by Sheriff's deputies arising out of the shooting of the plaintiff's father.

93.     There was a judgment in *Mendez,* Case No. 11-cv-04771, which arose from a 2010 incident where LACSD deputies shot two residents while searching for a third party. The deputies fired, shooting Mr. Mendez, a lawful resident, and his pregnant wife. After a bench trial the judge awarded plaintiffs substantial damages and substantial in attorneys' fees and costs.

94.     In *Taylor v. County of Los Angeles,* Case No. TC028803, an LACSD deputy unreasonably shot Mr. Taylor dead on August 25, 2016. The plaintiffs alleged wrongful death and violation of rights for stopping Mr. Taylor for no reason and that deputies lied, claiming Mr. Taylor had a gun, to justify their actions. The case settled prior to trial for millions of dollars.

95.     In *Garcia v. County of Los Angeles,* Case No. BC687480, LACSD deputies unreasonably shot a 17-year-old boy dead, then erroneously told the mother that her son had been transported to the hospital instead of telling her that her son had died.

96.     In *Spencer, et al. v. County of Los Angeles, et al.;* Case No. 2:19-cv-00808, LACSD deputies handcuffed decedent and applied a hobble restraint device to connect the decedent's ankles and wrists, then deputies added a total appendage restraint and held decedent down with their body weight causing labored breathing prior to his death.

97.     In *Lombardi v. County of Los Angeles;* Case No. 20STCV04771; plaintiff alleged excessive force arising out of the non-fatal deputy-involved-shooting of plaintiff.

98.     In *A.G. v. County of Los Angeles, et al.;* Case No. 2:17-cv-00074x, plaintiff alleged LACSD deputies used excessive force against Mr. Pickett and caused his death, including the use of a taser for over 30 seconds, and application of a Ripp Hobble.

99.     In *White v. County of Los Angeles, et al.;* Case No. 2:13-cv-03401, plaintiff alleged that LACSD deputies used excessive force against plaintiff, including the use of a Taser and flashlights to strike plaintiff.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

100.    In *A.A.V., et al. v. County of Los Angeles, et al.;* Case No. 2:20-cv-07393, plaintiff alleged excessive use of deadly force by a LACSD deputy, where the sergeant and deputies on scene failed to conduct an assessment of decedent and failed to request a mental evaluation team and did not have body-worn cameras.

101.    In *Nekesha Robertson, et. al. v. County of Los Angeles, et al.*, Case 2:16-CV-02761, LACSD deputies confronted Nicholas Robertson as he was walking near the intersection of Long Beach Boulevard and Magnolia Avenue, and used excessive force when they shot and killed him. A jury found that the deputies were negligent.

102.    In *Clark v. County of Los Angeles, et al.*, Case No. 2:20-cv-00304-DMG, plaintiff alleged LACSD deputies used excessive force upon encountering plaintiff in front of his home.

103.    In *Neal v. County of Los Angeles, et al.;* Case No. 2:20-cv-06315, plaintiff alleged that LACSD deputies used excessive force against plaintiff and had improper or lack of training.

104.    In *Guardado, et al. v. County of Los Angeles, et al.;* Case No. 20STCV33203, plaintiff alleged LACSD deputies used excessive deadly force.

105.    In *Murillo v. County of Los Angeles, et al.;* Case No. 20-cv-00223 and 2:21-cv-06937, plaintiff alleged LACSD deputies used excessive force and made an unlawful arrest.

106.    In *Escarcega v. County of Los Angeles, et al.;* Case No. 2:21-cv-06155, plaintiff alleged that LACSD deputies used excessive force and made an unlawful arrest when they punched plaintiff fracturing his jaw.

107.    In *Lockett v. County of Los Angeles, et al.;* Case No. 18-cv-05838, a case alleging LACSD deputies used excessive force when they punched the chest-down plaintiff in the face, deployed OC spray, and deployed a Taser several times, alleging that the deputies' conduct was motivated by their association with the Compton Station deputy gang.

108.    In *Estate of Eshetu v. County of Los Angeles, et al.*, Case No. BC702015, plaintiff alleged that LACSD deputies used excessive force when they fatally shot plaintiff's son.

109. In 2023, the Federal Bureau of Investigation opened two criminal investigations into incidents of excessive force by LACSD deputies in Palmdale and Lancaster. One incident involved an LACSD deputy who punched a woman in the face while she was holding her baby. The other involved a deputy from Lancaster who threw a woman to the ground by her neck in a grocery store parking lot after she started recording an arrest with her cellphone.

110. Defendants COUNTY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Crittenden and other individuals similarly situated.

111. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Supervisor DOES acted with intentional, reckless, and callous disregard for the life of Mr. Crittenden's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and Supervisor DOES were affirmatively linked to and were a significantly influential force behind the injuries to Mr. Crittenden.

112. The Defendant COUNTY's actions and inactions as described above, including the Defendant COUNTY's unconstitutional customs, practices, and policies, caused the deprivation of Mr. Crittenden's rights by Defendants ALBUREZ, VANARSDALE, COATES and DOES; that is, Defendant COUNTY's unconstitutional customs, practices, and polices are so closely related to the deprivation of Mr. Crittenden's rights as to be the moving force that caused the ultimate injury.

113. As a direct and proximate result of the aforementioned conduct, Mr. Crittenden suffered physical and mental injuries.

114. Accordingly, Defendants COUNTY and Supervisor DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 11-20)

115.    Mr. Crittenden refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

116.    Defendants acted under color of law and within the course and scope of their employment by LACSD and the COUNTY. The acts of these Defendants violated Mr. Crittenden's particular rights under the United States Constitution.

117.    Defendant COUNTY failed to properly and adequately train LACSD deputies—including from the Lancaster Station—to handle the usual and recurring situations with which they must deal, including regarding the use of force generally, de-escalation techniques, and the detention and arrest of a person. The training polices of Defendants COUNTY and Supervisor Does were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

118.    The training polices of the COUNTY were deficient in the following ways:

119.    The COUNTY failed to properly train LACSD deputies so that deputies do not escalate their interactions with residents and do not overreact and resort to use of deadly force when use of such force, or of any force at all, was not necessary and where there is no imminent risk of death or serious bodily harm to them or others.

120.    The COUNTY failed to properly train LACSD deputies to properly and adequately assess the need to use force against members of the public whom they come into contact, detain, or arrest, and, where some degree of force reasonably appears necessary, to properly and adequately assess the degree of force to use.

121.    The COUNTY failed to properly train LACSD deputies so that deputies do not permit fear to reach the point of becoming unreasonable fear, thereby resulting in uses of force that cause serious injury to residents, such as Mr. Crittenden.

122.    The COUNTY failed to properly train LACSD deputies in proper police tactics, such as situational awareness. Because of this lack of proper training by the COUNTY,

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

Defendants did not use proper police tactics in handling of the contact with Mr. Crittenden, and instead used defective police tactics, including the lack of a situational awareness by the said Defendants.

123. The COUNTY failed to properly train LACSD deputies, such as Defendants, in the importance of effective communication prior to using force. Because of the lack of proper training by the COUNTY, said Defendants did not use effective communication prior to and during the use of force against Mr. Crittenden.

124. The examples listed above in this complaint of incidents of LACSD deputies engaging in unlawful, excessive, and unconstitutional uses of force show the repeated and pervasive nature of the problem, which in turn demonstrates the Defendant COUNTY's failures to properly train LACSD deputies—including from the Lancaster Station—in the areas listed above. The frequency of these and similar events demonstrates that these incidents and the one involving Mr. Crittenden on September 5, 2022 are attributable to Defendant COUNTY's failure to properly train LACSD deputies.

125. Defendants COUNTY and Supervisor Does were deliberately indifferent to the obvious consequences of its failure to train their officers adequately.

126. The failure of Defendant COUNTY and Supervisor DOES to provide adequate training caused the deprivation of Mr. Crittenden's rights by Defendants ALBUREZ, VANARSDALE, COATS, and DOES; that is, Defendants' failures to train are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

127. As a direct and proximate result of the aforementioned conduct, Mr. Crittenden suffered physical and mental injuries.

128. Accordingly, Defendants COUNTY and Supervisor DOES are liable to Mr. Crittenden for compensatory damages under 42 U.S.C. § 1983.

//

//

//

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

COMPLAINT
-22-

**FOURTH CAUSE OF ACTION**

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

(Against Defendants COUNTY and DOES 11-20)

129. Mr. Crittenden refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

130. Upon information and belief, a final policymaker, including Defendants COUNTY and Supervisor Does acting under color of law, had final policymaking authority concerning the acts of Defendants ALBUREZ, VANARSDALE, and COATS, and ratified their conduct and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of these Defendants' conduct.

131. Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants ALBUREZ, VANARSDALE, and COATS were "within policy," and have ratified multiple prior incidents of the use of excessive force.

132. The Defendant COUNTY's unconstitutional ratification of Defendants' use of excessive and unreasonable force caused the deprivation of Mr. Crittenden's rights; that is, Defendant County's ratification is so closely related to the deprivation of Mr. Crittenden's rights as to be the moving force that caused the ultimate injury.

133. Based on information and belief, Defendant COUNTY has a longstanding practice of unconstitutional policies, including to not discipline, reprimand, retrain, suspend, or otherwise penalize deputies in connection with their underlying acts giving rise to constitutional violations, which Defendant COUNTY routinely ratifies.

134. As a direct and proximate result of the aforementioned conduct, Mr. Crittenden suffered mental and physical injuries.

135. Accordingly, Defendant COUNTY and Supervisor DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

//

//

//

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

## FIFTH CAUSE OF ACTION

### Supervisory Liability for Acts of Subordinates (42 U.S.C. § 1983)

(Against Does 1-20)

136. Mr. Crittenden refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

137. At all times relevant, Defendants acted under color of law and within the course and scope of their employment for Defendant COUNTY and LACSD.

138. At all relevant times herein, Defendants ALBUREZ, VANARSDALE, and COATS were acting under the supervision and direction of other Defendant Does who were the supervisors on scene and/or scene commanders.

139. Defendants DOES 1-20 knowingly contributed, participated in, and failed to terminate or intervene in the constitutional violations as described herein. In other words, the conduct of Defendants DOES violated Mr. Crittenden's rights through their unconstitutional policies, procedures, training, supervision, and direct involvement in this action.

140. Defendants DOES knew of should have known that Mr. Crittenden was not an immediate threat to officers or any other person at the time force was used and should have de-escalated the situation as opposed to escalating the situation themselves and allowing the situation to escalate by the conduct of their subordinates.

141. Defendants DOES knew their subordinates ALBUREZ, VANARSDALE, and COATS were engaging in the use of force against Mr. Crittenden and knew or reasonably should have known the subordinates' conduct would deprive him of his right to be free from excessive force, and that this excessive force created a substantial risk of harm to Mr. Crittenden, including serious physical and mental injuries. They also knew or reasonably knew of Defendants ALBUREZ's, VANARSDALE's, and COATS's propensities for excessive force, and that these propensities posed a substantial risk of harm to residents such as Mr. Crittenden.

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

142. Defendants DOES disregarded these risks and failed to act to prevent their subordinates from engaging in the excessive force against Mr. Crittenden, such as by reprimanding, controlling, disciplining, training, or terminating them.

143. By their individual conduct as described herein, Defendants DOES set in motion a series of acts by their subordinates. Once set in motion, Defendants DOES refused to terminate the series of acts by their subordinates that they knew or reasonably should have known would cause the subordinates to deprive Mr. Crittenden of his rights.

144. Defendants DOES disregarded the known and/or obvious consequence that their particular policy, training, and supervision deficiencies and omissions would cause their subordinates to violate Mr. Crittenden's constitutional rights; and the policy and training deficiencies and omissions of Defendants Does caused their subordinates to deprive Mr. Crittenden of his constitutional rights.

145. Defendants Does conduct was so closely related to the deprivation of Mr. Crittenden's rights, specifically because they personally participated in those deprivations, that it was the moving force—and substantial factor—that caused his ultimate injury, harm, and/or damages.

146. As a direct and proximate result of the conduct of Defendants DOES, Mr. Crittenden suffered great physical and mental injuries.

147. Accordingly, Defendants DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

148. The conduct of Defendants DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Crittenden and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for a jury trial and for judgment against Defendants COUNTY, ALBUREZ, VANARSDALE, COATS, and DOES 1-20 as follows:

1. For compensatory damages according to proof at the time of trial;

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

COMPLAINT
-25-

2. For general and special damages, including damages for emotional and mental distress, in an amount to be determined at trial;

3. For punitive damages against the individual defendants in an amount to be proven at trial;

4. For attorney's fees pursuant to 42 U.S.C. § 1988;

5. For reasonable costs of this suit;

6. For interest; and

7. For such other and further relief as the court deems just and proper.

Dated:  April 2, 2025                    **QURESHI LAW PC**


By: */s/ Max Schoening*_____
    Max A. Schoening
    Omar G. Qureshi

    *Attorneys for Plaintiff Corey Crittenden*


**DEMAND FOR JURY TRIAL**

Plaintiff Corey Crittenden hereby demands a trial by jury as to all causes of action.


Dated: April 2, 2025                    **QURESHI LAW PC**


By: */s/ Max Schoening*_____
    Max A. Schoening
    Omar G. Qureshi

    *Attorneys for Plaintiff Corey Crittenden*

QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, California 90017

COMPLAINT
-26-